[Cite as *Sutherly v. Theaker*, 2025-Ohio-5208.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

LAURA SUTHERLY,

Plaintiff-Appellant,

v.

RICHARD M. THEAKER, II, et al.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 25 BE 0003**

---

Civil Appeal from the
Court of Common Pleas Probate Division
of Belmont County, Ohio
Case No. 20 CV 316

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Mac P. Malone, Atty. Thomas L. Feher*, Thompson Hine LLP, for Plaintiff-Appellant
 and

*Atty. Karen S. Hockstad, Atty. Matthew H. Sommer*, Dinsmore & Shohl LLP, for
Defendants-Appellees.

Dated:  November 7, 2025

**Robb, P.J.**

{¶1} Appellant, Laura Sutherly, appeals the December 19, 2024 decision issued by the Belmont County Court of Common Pleas, Probate Division, in case number 2020 CV 316, granting summary judgment in favor of Appellee, Richard M. Theaker II. Sutherly contends the trial court erred by finding Theaker II is the sole owner of the decedent's oil and gas royalty rights. Sutherly also contends the court erred by denying her the right to amend and supplement her pleadings. For the following reasons, we affirm.

Statement of the Case

I.      The Estate Proceedings: Belmont County Court of Common Pleas, Probate Division, Case No. 2020 ES 316

{¶2} Sutherly and Theaker II are siblings and named beneficiaries in the Richard M. Theaker Trust. Richard M. Theaker was their father. He died testate in 2020.

{¶3} Theaker II, by and through counsel, applied to administer their father's estate. Theaker II, as applicant, filed the next of kin form. The form identifies the estate heirs as himself and his two sisters, Laura S. Sutherly and Theresa A. Simpson. As the sole beneficiary, Theaker II listed the decedent's trust. (August 28, 2020 Next of Kin Form.)

{¶4} Theaker II was named as the executor in the will, as well as trustee of the trust. The probate court issued an entry appointing Theaker II as fiduciary with the authority to administer the decedent's estate. (August 28, 2020 Entry.)

{¶5} The decedent's will indicates all of his property is to be transferred to the trust upon his death. The schedule of assets includes the oil and gas rights as property owned by the estate and lists the value of the rights as zero. (November 16, 2020 Schedule of Assets.)

{¶6} On the same date the schedule of assets was filed, Theaker II also filed the inventory and appraisal. He also signed a waiver of notice of the hearing on the inventory the same date in his representative capacity. A hearing on the inventory was scheduled for December 8, 2020, but was not held. (November 16, 2020 Waiver of Hearing.)

{¶7} The probate court also scheduled the estate for a hearing on the final distributive account.

{¶8} The trust delineates the distribution of the decedent's assets. One of the assets included in the decedent's trust is decedent's royalty interest under a paid up oil and gas lease dated September 16, 2011. The decedent's trust indicates in part that the rights under the September 16, 2011 lease with XTO Energy, Inc. are to be divided equally between Theaker II and Sutherly. In August of 2017, the decedent modified the trust and executed an amendment concerning the royalty rights, which states in part: "The Trustee shall distribute one-half of all royalty payments attributable to the Real Estate under the Lease to my daughter, Laura Sutherly, and one-half of all royalty payments attributable to the Real Estate to my son, Richard Theaker II."

{¶9} On November 1, 2021, Theaker II, as fiduciary, filed a certificate of service of account to the heirs and beneficiaries. The probate court approved the inventory and the final distributive account in December of 2021. The estate was settled and closed.

{¶10} A year and a half later, in July of 2023, Theaker II filed a motion to reopen the estate. Theaker II alleged he erroneously included the royalty interest in the decedent's estate. Theaker II claimed he did not realize the decedent had executed a transfer on death (TOD) affidavit conveying the property upon his death to Theaker II only. Thus, Theaker II claimed that upon his father's death in 2020, the royalty interest automatically passed to Theaker II alone and did not become part of the decedent's estate. Theaker II asked the probate court to grant him 30 days to file an amended inventory. (July 28, 2023 Motion to Reopen.)

{¶11} In response, Sutherly intervened in the estate proceedings. She sought leave to defend and protect her interests. Once she obtained leave, Sutherly filed an opposition to Theaker II's motion to reopen the estate. She asserted the issue had already been addressed and Theaker II waived and had missed the opportunity to make this claim. Sutherly argued Theaker II did not previously raise the issue and the royalty interest was included as an estate asset, which was already distributed. Sutherly urged the court to deny the motion to reopen the estate because the final accounting was approved in the estate proceedings, the case was closed, and the time to appeal had passed.

{¶12} Sutherly also implored the court to conclude that Theaker II should have sought Civ.R. 60(B) relief, and even if he had, the same was not timely and not warranted.

Additionally, Sutherly urged the court to find that res judicata and collateral estoppel applied and precluded the relief he sought, i.e., relief from a final judgment due to his misunderstanding of the law or legal ramifications of a TOD affidavit. Last, she claimed the invited error doctrine applied and precluded Theaker II from taking an adverse legal position in a subsequent proceeding. She urged the court to deny his motion to reopen the estate. (August 31, 2023 Opposition.)

{¶13} The parties filed replies and sur-replies, and the trial court ultimately issued a judgment sua sponte staying the probate proceedings to allow the legal issues to be litigated and determined in the companion case. The probate court noted the same parties and legal issues were being litigated in both actions, and it further held:

> the resolution of the factual and legal issues in the *Sutherly* action are at issue in the matter now before the Court in this estate. That is, if the Intervenor prevails in the *Sutherly* action then this estate would not need to be reopened . . . However, if the Movant prevails . . . , then the Motion to Reopen has merit as the disputed oil and gas interests would be characterized as non-probate assets such that the . . . filing of an amended inventory and amended account in this estate would be necessary.

(October 25, 2023 Judgment.) Thus, the probate court stayed the estate proceedings in case number 20 ES 316, and stayed its ruling on the motion to reopen. The probate court found the issues would be resolved in the companion case, case number 20 CV 316. (October 25, 2023 Judgment.)

{¶14} Sutherly appealed to this court in Seventh District Court of Appeals case number 23 BE 53. We sua sponte dismissed her appeal as lacking a final, appealable order. (November 30, 2023 Judgment.)

II. The Civil Action: Belmont County Court of Common Pleas, Probate Division, Case No. 2020 CV 316

{¶15} Sutherly filed her initial complaint in the probate court in March of 2023 in this case against Richard M. Theaker II, individually and as the trustee of the Richard M. Theaker Trust. Sutherly asserted several claims for relief, including declaratory judgment, conversion, tortious interference, unjust enrichment, and breach of trust and fiduciary

duty. Each claim concerns the ownership of the decedent's royalty interest under the paid up oil and gas lease dated September 16, 2011.

{¶16} After Sutherly filed suit, she issued two subpoena duces tecum to nonparties, Ascent Resources-Utica, LLC, and XTO Energy, Inc. Theaker II moved for a protective order, contending the scope of these requests was overly broad. Theaker II also moved for judgment on the pleadings under Civ.R. 12(C). Theaker II likewise asked the court to stay discovery pending the court's resolution of his motion for judgment on the pleadings. Sutherly opposed both motions. Sutherly also sought leave to file her first amended complaint.

{¶17} On July 18, 2023, the trial court ruled on the pending motions. It overruled Theaker II's motion for judgment on the pleadings, but granted his motion for a protective order in part. The court ordered the documents secured via the subpoenas that were to be treated as confidential and designated as "counsel only." The court found the motion to stay discovery was moot as a result of its other decisions. The trial court also granted Sutherly leave to file her first amended complaint, noting that her amended complaint added one paragraph alleging Theaker II should be judicially estopped from asserting that Sutherly's share of the oil and gas lease belongs to Theaker II. (July 18, 2023 Judgment.)

{¶18} Sutherly filed her first amended complaint on July 25, 2023. Attached as exhibit A was a copy of the 20-page Richard M. Theaker Trust. Attached as Exhibit B was the Amendment to the Richard M. Theaker Trust concerning the oil and gas lease. Attached as Exhibit C was the Assignment Agreement dated August 31, 2021 between Richard M. Theaker II, individually, Richard M. Theaker II as the trustee of the Richard M. Theaker Trust, and Laura Sutherly. Attached to the complaint as Exhibit D was a copy of the last will and testament of Richard M. Theaker. (July 25, 2023 Amended Complaint.)

{¶19} The Trust identifies the decedent's three children as beneficiaries, Richard Theaker II, Terri Simpson, and Laura Sutherly. Section 2.2 of the Trust is titled "Oil & Gas Lease." This section states in part that certain real estate is subject to a paid up oil and gas lease dated September 16, 2011 and that if Mary E. Jones (the decedent's sister) was living at the time of his death, then she and Theaker II were to each receive one-half of all royalty payments attributable to the real estate under the lease. And if Mary E.

Jones was not alive at the time of Theaker's death, then the rights under the lease relating to the real estate were to be distributed "equally to Richard Theaker, II, and Laura Sutherly." The Trust is dated October 13, 2015 and was signed by the Grantor, Richard M. Theaker and the Trustee, Richard M. Theaker. (Exhibit A.)

{¶20} Exhibit B, the amendment to the Richard M. Theaker Trust, is dated August 31, 2017 and was signed on that date. The Amendment states in part:

Article 2, Section 2.2. <u>Oil and Gas Lease</u>.

Real estate parcel 61-01227 in Belmont County, Ohio (the "Real Estate") is subject to a Paid Up Oil and Gas Lease between the Grantor and XTO Energy, Inc., dated September 16, 2011 (the "Lease"). The Trustee shall distribute one-half of all royalty payments attributable to the Real Estate under the Lease to my daughter, Laura Sutherly, and one-half of all royalty payments attributable to the Real Estate under the Lease to my son, Richard Theaker II. If either Laura Sutherly or Richard Theaker II is deceased, then to their respective descendants, per stirpes, to be held in trust or distributed as is appropriate under the terms of this Trust.

{¶21} Exhibit C attached to Sutherly's Amended Complaint is a copy of the paid up oil and gas lease assignment agreement. The Assignment Agreement states it was "entered effective as of August 31, 2021, by and among Richard Theaker, II, Trustee of the Richard M. Theaker Trust dated October 13, 2015 ('Assignor') and Richard M. Theaker, II and Laura Sutherly ('Assignees')." Under the "Background Information" section, the Assignment Agreement states in part:

B. Richard M. Theaker died on July 30, 2020, and Richard Theaker, II, as the duly appointed Executor of his Estate . . . assigned and transferred the Lease to the Assignor pursuant to Richard M. Theaker's Will.

C. Pursuant to Section 2.2 of the Richard M. Theaker Trust . . ., the Assignor is to distribute royalty rights attributable to Belmont County real estate parcel 61-01227 to Assignees and pursuant to Section 2.3.3 of the Trust the Assignor is to distribute all other rights and interests under the Lease to Richard M. Theaker, II.

D.  The parties are entering into this Agreement to evidence and document the assignment and transfer of the Lease to the Assignees pursuant to the Trust.

**{¶22}**  The Assignment Agreement thereafter states in part:

1.  <u>Assignment</u>.  Effective as of the date of this Agreement, the Assignor hereby assigns and transfers the Lease, in part, to Laura Sutherly the right to receive one-half of the royalty payments under the Lease . . . [and] the Assignor hereby assigns and transfers the Lease, in part, to Richard M. Theaker, II, all other rights and interests under the Lease.

**{¶23}**  Exhibit D attached to the Amended Complaint is a copy of the Last Will and Testament of Richard M. Theaker and certain filings in the estate proceedings.  One of the filings included in Exhibit D is the Schedule of Assets filed in Theaker's estate.  The schedule includes "Oil and Gas rights (Underlying surface parcel #s 61-00338.02, 61-00338.000, 61-01227.001)" with a listed value of zero.

**{¶24}**  The probate court issued its order approving the inventory and appraisal on December 8, 2020.  This judgment is included under and as a part of Exhibit D to Sutherly's Amended Complaint.  The Order states in part "no exceptions having been filed thereto, it is now ordered that said Inventory and Appraisal, after being duly examined, be allowed and confirmed." (December 8, 2020 Order.)  The receipts and disbursements, filed in the probate court proceedings on February 23, 2021, lists and includes an "Oil and Gas Royalty check" in the amount of $8,522.35 in the receipts column.  This is also included as part of Exhibit D attached to Sutherly's Amended Complaint.  The probate court's entry approving and settling the estate account was filed December 24, 2021.

**{¶25}**  Theaker II filed his answer.  (August 16, 2023 Answer.)  In November of 2023, Theaker II filed a motion for leave to amend his answer to add counterclaims and to supplement his answer.  (November 6, 2023, Motion for Leave.)  Theaker II asserted claims against Sutherly alleging slander of title and tortious interference with contract.  He also sought preliminary and permanent injunctive relief.  Sutherly opposed the motion. The trial court granted Theaker II's motion for leave to file an amended answer and counterclaim.  (December 15, 2023 Judgment.)

{¶26} In July of 2024, Sutherly moved for leave to amend and supplement her complaint a second time. She alleged she needed to amend her claims in light of facts learned during the litigation. Sutherly generally claimed she learned about certain failures made by Theaker II and his self-dealing regarding the disputed royalty interest. Sutherly likewise sought to enforce the in terrorem provision in the decedent's last will and testament, which threatened loss of inheritance for beneficiaries who challenged the will. (July 19, 2024 Motion for Leave.)

{¶27} On the same date, Sutherly also filed a motion for partial summary judgment. She asked the trial court to determine that she owns at least 50% of the oil and gas royalty and to dismiss Theaker II's counterclaims with prejudice. Sutherly argued res judicata precluded the re-litigation of the issue of whether the royalty interest was the property of the estate. She claimed the prior adjudication and determination in the estate proceedings was final and not appealed. Thus, she claimed Theaker II's relief, if any, must come from the malpractice action he filed against counsel for the trust and estate. Sutherly also contended Theaker II should be judicially estopped from arguing the TOD transferred the interest to him since he took a contrary position in the estate proceedings. (July 19, 2024 Motion for Partial Summary Judgment.)

{¶28} Theaker II opposed both of Sutherly's motions. Theaker II also filed a cross-motion for summary judgment. He urged the trial court to find that no genuine issues of material facts exist and he is entitled to judgment as a matter of law. Theaker II likewise urged the court to find Sutherly's motion to supplement and amend her complaint will be rendered moot by the court's resolution of the summary judgment motions.

{¶29} In support, Theaker II attached his affidavit. He avers in the affidavit that he learned via an email from Ascent Resources-Utica, LLC dated April 13, 2022, that he became the 100% owner of the oil and gas royalties as a result of his father's execution of a TOD affidavit concerning the interests naming him as the sole beneficiary. Theaker II attached a copy of the correspondence from Ascent as Exhibit B to his opposition and a copy of the TOD designation affidavit as Exhibit C. (August 2, 2024 Opposition & Summary Judgment Motion, Exhibit 1.)

{¶30} Exhibit B attached to his motion is a copy of an email from Jennifer Kitchell at Ascent Resources to Richard Theaker II. Attached to the email are two TOD

designation affidavits. Kitchell states in her email that "100% of this interest automatically transferred to you when he passed." Attachment number one is a TOD designation affidavit regarding property located in Jefferson County. It reflects it was recorded on March 18, 2010 with the Jefferson County Recorder, and it was signed by Richard M. Theaker on February 18, 2010. It designates Richard M. Theaker, II as the beneficiary to receive the title to the property on the death of the owner. It concerns parcel number 20-00064.000, known as 1103 State Route 250, Adena, Ohio.

{¶31} The second TOD designation affidavit attached to the email shows it was filed with the Belmont County Recorder on May 5, 2021. It shows that Theaker II named the "Theaker Family Trust dated March 13, 2021" as the beneficiary to receive Theaker II's "entire interest in the Properties upon his death." Richard Theaker II executed the TOD affidavit on March 13, 2021, and it concerns six parcels in Belmont County.

{¶32} The parties filed oppositions and replies in support of their respective motions. The trial court issued its decision on December 19, 2024. The trial court found the facts were not disputed but the legal ramifications were contested. The trial court's factual findings include the following.

{¶33} On February 18, 2010, the parties' father executed a TOD Affidavit, which was recorded in March of 2010. He also executed a lease in September of 2011 with XTO Energy, Inc. permitting it to drill and extract oil and gas from the property and provided for the payment of royalties to the decedent. The wells began producing in April of 2020. The parties' father died in July of 2020. (December 19, 2024 Judgment.)

{¶34} Theaker II opened the estate in August of 2020. Theaker II was named as executor. The sole beneficiary in the decedent's will was the trust. Theaker II was also named as the trustee of the decedent's trust. Theaker II filed the inventory and appraisal identifying estate assets, which included the gas royalty interests stemming from the XTO lease agreement. There were no objections to the inventory, and the court approved the same.

{¶35} In August of 2021, Theaker II as trustee and executor, executed a paid-up oil and gas lease assignment agreement and assigned the lease to the trust. Theaker II also executed a second paid-up oil and gas lease stating Theaker II had transferred the lease to the trust, and that he was pursuant to Section 2.2 of the trust assigning 50% of

the gas royalty interest to Sutherly and the other 50% was being assigned to Theaker II. (December 19, 2024 Judgment.)

**{¶36}** Theaker II filed the estate's final accounting in November of 2021, and the court approved the same on December 24, 2021. The estate proceedings, case number 20 ES 316, were closed.

**{¶37}** Three months later, in April of 2022, Theaker II claims he learned from Ascent that he was the sole owner of the royalty interests pursuant to a TOD affidavit. And upon securing the advice of legal counsel, Theaker II took the position that the royalty interest solely belonged to him, not the estate or Sutherly. (December 19, 2024 Judgment.)

**{¶38}** Sutherly filed her complaint in this case in March of 2023. Theaker II sought to reopen the estate in July of 2023, contending the oil and gas interests were incorrectly included as estate assets when in reality they were not. The probate court stayed the original estate proceedings pending its resolution of this case. (December 19, 2024 Judgment.)

**{¶39}** The trial court resolved the merits of the dispute in this case in Theaker II's favor. The court rejected Sutherly's judicial estoppel and res judicata arguments and found neither applied since both doctrines require an adjudication of the issue on the merits. It explained because there were no exceptions to the inventory or hearing on the matter, there was no adjudication as a matter of law. The court noted that although it appears the decedent wanted the parties to equally share the royalty interest between them, "it does not appear that proper legal action and estate planning was undertaken to effectuate the same." The court held that because of the TOD, "the property and the decedent's interest therein, which included the right to receive the gas royalty interests never became assets of his trust." (December 19, 2024 Judgment.)

**{¶40}** Consequently, the trial court denied the Sutherly summary judgment and found she is not the 50% owner of the royalty interest. Instead, the court found Theaker II is the record owner of 100% of the royalty. The court held the probate proceedings were not determinative of the ownership of the disputed interest even though it was listed in the estate inventory.

Case No. 25 BE 0003

**{¶41}** The trial court dismissed Theaker II's counterclaims with prejudice. The trial court also overruled Sutherly's motion for leave to supplement and amend her pleading as moot. The trial court entered summary judgment in Theaker II's favor and noted its decision was a final, appealable order. (December 19, 2024 Judgment.)

<u>Summary Judgment Standard of Review</u>

**{¶42}** We review awards of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Pursuant to Civil Rule 56(C), summary judgment is proper if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

**{¶43}** The party moving for summary judgment bears the initial burden of demonstrating the absence of genuine issues of material facts concerning the essential elements of the non-moving party's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). The moving party must support the motion by pointing to some evidence in the record of the type listed in Civil Rule 56(C). *Id.* at 292-293. If the moving party satisfies its burden, the non-moving party has the reciprocal burden to demonstrate a genuine issue of fact remains for trial. *Id.* at 293. The non-moving party may not rest on allegations or denials in her pleadings, but must point to or submit evidence of the type specified in Civil Rule 56(C). *Id.*; Civ.R. 56(E).

**{¶44}** "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.,* 67 Ohio St.3d 344, 346 (1993). Doubts are to be resolved in favor of the non-movant. *Leibreich v. A.J. Refrig., Inc.*, 67 Ohio St.3d 266, 269 (1993). A court "may not weigh the proof or choose among reasonable inferences." *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 121 (1980).

Assignments of Error

**{¶45}** Sutherly raises three assigned errors on appeal. We address her first two assignments of error collectively, which assert:

"[No. 1] The Probate Court erred when it granted a summary judgment deciding that defendant and appellee Richard M. Theaker II was the sole owner of the contract rights to receive royalty payments for gas produced from the subject property (the 'Gas Royalty Interests'). R. 75."

"[No. 2] The Probate Court erred when it denied in part plaintiff and appellant Laura Sutherly's motion for partial summary judgment by concluding she was not the owner of at least 50% of the Gas Royalty Interests. *Id.*"

**{¶46}** Sutherly's first two assigned errors raise seven reasons why summary judgment should not have been granted in Theaker's favor: 1.) res judicata; 2.) judicial estoppel; 3.) exception to transfer; 4.) severance; 5.) intervening transfer; 6.) post-death assignment; and 7.) equitable estoppel.

**{¶47}** Sutherly argues Theaker II should be precluded via res judicata from relitigating facts or an issue that was already addressed in a prior action. We review a res judicata decision de novo since the application of res judicata is a question of law. *Lycan v. Cleveland*, 2022-Ohio-4676, ¶ 21.

> The doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel. *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 381, 653 N.E.2d 226. Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action. *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.* (1998), 81 Ohio St.3d 392, 395, 692 N.E.2d 140. Where a claim could have been litigated in the previous suit, claim preclusion also bars subsequent actions on that matter. *Grava,* 73 Ohio St.3d at 382, 653 N.E.2d 226.

> Issue preclusion, on the other hand, serves to prevent relitigation of any fact or point that was determined by a court of competent jurisdiction in

a previous action between the same parties or their privies. *Fort Frye,* 81 Ohio St.3d at 395, 692 N.E.2d 140. Issue preclusion applies even if the causes of action differ. *Id*.

*O'Nesti v. DeBartolo Realty Corp*., 2007-Ohio-1102, ¶ 6-7.

[C]laim preclusion has four elements in Ohio: (1) a prior final, valid decision *on the merits* by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.

(Emphasis added.) *Lycan* at ¶ 23, citing *Hapgood v. Warren*, 127 F.3d 490, 493 (6th Cir. 1997).

**{¶48}** Here, the trial court found that the issue had not been litigated or "decided on the merits," and as such, res judicata does not apply.

**{¶49}** Sutherly likewise directs us to caselaw and contends that because Theaker II had notice and an opportunity to object and did not, he should be precluded from doing so now. Because the ownership of the royalty interest was already decided, Sutherly urges us to find that we cannot address the issue anew. Sutherly claims the adjudication was "on the merits" despite the trial court's conclusion to the contrary. She further relies on R.C. 2109.35 in support.

**{¶50}** Theaker II, on the other hand, urges us to affirm. He directs us to caselaw holding that the inclusion of the property in the inventory is not res judicata*,* and does not prejudice the claims of appellants as to ownership since the matter was not challenged or litigated. *Cole v. Ottawa Home and Savings Assn*., 18 Ohio St.2d 1 (1969); *In re Estate of Ross*, 65 Ohio App.3d 395, 399 (11th Dist. 1989); *Eger v. Eger*, 39 Ohio App.2d 14, 19 (8th Dist. 1974). Theaker II contends that ownership of the royalty interest was not actually litigated or contested in the probate proceedings, and as such, res judicata should not apply. The trial court agreed.

**{¶51}** Sutherly directs us to *In the Matter of Estate of Cramblett*, 1995 WL 750144, (7th Dist. Dec. 15, 1995), in support. In *Cramblett*, the decedent's wife was named executrix. She administered his estate and filed an inventory and appraisal that included

two items of farm equipment, among other things. A hearing on the inventory was held. The decedent's son Richard Cramblett appeared in the proceedings, but did not object to any items that were included in the estate inventory.

{¶52} The estate subsequently initiated proceedings against Richard Cramblett for the return of estate property, i.e., one of the pieces of farm equipment and proceeds from the sale of cattle. Richard counterclaimed and alleged in part that he had a "financial interest" in the farm equipment. The probate court dismissed the complaint filed by the estate, noting the assets in question had been delivered to the estate. Additionally, the court found in part that the son's counterclaim was barred by res judicata, explaining:

> Richard Cramblett had an opportunity to assert his claim, that he had received notice of the inventory and an opportunity to be heard on the hearing on the inventory, and that, on March 26, 1993, the court approved the inventory and appraisal by entry which was journalized. The judge went on to reason that that was an appealable order of the court and that, since the time for appeal had passed and had passed prior to the filing of the complaint involved, the defendant's claims, as asserted in the first branch of the counterclaim, were barred by the doctrine of *res judicata.*

*Id.* at *1.

{¶53} On appeal to this court, the son disagreed with the court's application of res judicata. We affirmed, explaining in part:

> The matters addressed in the first counterclaim very specifically were a $2,000.00 interest in the Gehl 3410 Skid Steer with Forks and an $800.00 interest in the New Idea 324 Corn Picker. These items very clearly appeared as a part of the inventory which was presented to the probate court. The appellant had been notified of the hearing on this inventory and afforded an opportunity to object thereto which he did not do.

*Id.* at *2.

{¶54} Sutherly also directs us to *Winland v. Christman*, 2019-Ohio-2408 (7th Dist.), in support of reversing the court's decision. *Winland* is an appeal from an action to a quiet title filed in Monroe County. Winland purchased approximately 40 acres in 1994, and in the year 2000, Winland filed an action to quiet title to the property under

Ohio's Dormant Mineral Act against three individual owners of certain oil and gas rights underlying the property. Winland served the three via publication, and the court quieted title to the oil and gas rights in Winland's favor against the three named individuals, their heirs, and assigns. *Id*. at ¶ 4.

**{¶55}** Winland subsequently became aware of other existing reservations, and filed a second suit to quiet title against those reservationists with service by publication. The Christman appellants responded and sought to defend their interests in the second suit. They were successors to the owners or reservations addressed in the first quiet title action. *Id*. at ¶ 5-6. The trial court found their claims were barred by res judicata and more specifically, claim preclusion. On appeal, this court agreed and concluded that the appellants' alleged interest was traceable to the interests at issue in the first action, such that they were in privity and res judicata applied. *Id*. at ¶ 50-55.

**{¶56}** Theaker II urges us to affirm and directs us to the decisions in *Cole v. Ottawa Home and Savings Assn.*, 18 Ohio St.2d 1 (1969), and *In re Estate of Ross*, 65 Ohio App.3d 395, 399 (11th Dist. 1989); *Eger v. Eger*, 39 Ohio App.2d 14, 19 (8th Dist. 1974). Citing *Cole v. Ottawa Home & Sav. Ass'n*, 18 Ohio St.2d 1 (1969), Theaker II claims Ohio courts have held that "a probate court's acceptance of an uncontested inventory is not an adjudication, on the merits or otherwise, of an estate's ownership of the assets listed therein."

**{¶57}** The *Cole* Court explained that the summary proceeding contemplated by R.C. 2115.16 is only binding on or preclusive against individuals who were actual parties to the proceeding:

> Pursuant to Section 2115.16, Revised Code, certain persons must be served with notice of this hearing, but are not thereby made parties to the hearing since their appearance or nonappearance is discretionary. Provision is made for exceptions to be filed to the inventory 'by any person interested in the estate or in any of the property included in the inventory.' When exceptions are filed, the only persons to whom notice of the exceptions is required to be given are the 'executor or administrator and his attorney.' No provision for notice to other persons is made mandatory by

the statute, although as a matter of practice notice is given to those persons who were notified of the hearing in the first instance.

. . .

We can find no instance where this court has ever held that a person not a party to the summary proceeding contemplated by Section 2115.16, Revised Code, would be precluded from attacking that judgment.

While there have been statements made by this court that the Probate Court has the power to determine title to assets claimed by the executor or by the exceptor as belonging in the inventory of an estate in a summary proceeding pursuant to Section 2115.16, Revised Code, nowhere can we find a declaration that this determination would bind any person not a party to the proceedings

*Id*. at 7-8.

{¶58} *Cole* involved two consolidated appeals in similar cases.  The first involved the estate of Westrick.  Westrick died testate, and one of her daughters, Schomaeker, filed exceptions to the inventory for the failure to include certain bank accounts in the estate inventory.  The decedent's other daughter, Mary Cole, did not file an exception, but was sent notice of exception and the hearing on the same.  There was nothing of record showing that Cole received notice of the exception or the hearing.  The probate court found the exception had merit and included the account proceeds in the estate.

{¶59} Cole thereafter refused to accept her share of the estate and filed suit to recover the proceeds of the bank accounts.  The trial court granted Schomaeker's motion to dismiss on res judicata grounds.  The court of appeals reversed.  The Supreme Court allowed the motion to certify a conflict.

{¶60} The second appeal before the Supreme Court in *Cole* involved the estate of Lilliam Marsek.  One of Marsek's daughters, Mildred Caton, had a general power of attorney through which Caton opened bank accounts with her mother's money in Caton's name.  Caton later added the name of her sister, Grace Curran, to the accounts.

{¶61} Marsek died testate and designated her three children as beneficiaries. Caton was named executrix and did not include the money in the bank accounts as an asset of the estate, among other things.  The decedent's son, Robert Marsek, filed

exceptions to the inventory on behalf of his incompetent father. After a hearing, the probate court agreed with Robert and ordered Caton to file an amended inventory to include the additional assets. The appellate court affirmed.

**{¶62}** The Supreme Court held that "[s]ince no persons, other than the executor and exceptor, were parties before the Probate Court in either of the actions, no other persons can be bound by the determination in the summary proceeding contemplated by Section 2115.16, Revised Code." In the *Cole* appeal, the court found the bank was not a party and thus not bound to the decision. The court found that Mary Cole was also not a party to the probate proceedings.

**{¶63}** Similarly, in the *Marsek* appeal, the Supreme Court concluded that Grace Curran was not a party and thus not bound by the probate court's judgment after the hearing on the exceptions. The court found the fact that Grace was present at the hearing on the inventory was of no consequence. Instead, the court explained "[t]he record shows that Grace Curran was . . . considered only as a witness, and was even asked to leave the courtroom upon motion by counsel . . . for a separation of witnesses. She in no way participated in the proceedings other than by her attendance in the courtroom." *Id*. at *11.

**{¶64}** Upon applying *Cole*, whether res judicata applies and operates to bar the re-litigation of the ownership of the oil and gas royalty here is determined by whether Theaker II was a party to the probate proceeding in his individual or personal capacity.

**{¶65}** In *DiPaolo v. DeVictor,* 51 Ohio App.3d 166, 171 (10th Dist. 1988), the Tenth District Court of Appeals held:

> A prior adjudication serves to settle all issues between parties that could have been raised and decided along with those that were decided. *Covington & Cincinnati Bridge Co. v. Sargent* (1875), 27 Ohio St. 233; *Bolles v. Toledo Trust Co.* (1940), 136 Ohio St. 517, 17 O.O. 156, 27 N.E.2d 145. If exceptions had been filed to the final accounting, then those parties who had raised exceptions would be bound by the probate court's determination as to inclusion of assets in the estate. *Id.; Cole v. Ottawa Home & Savings Assn.* (1969), 18 Ohio St.2d 1, 47 O.O.2d 1, 246 N.E.2d 542.

There is no indication that any of the plaintiffs, except Enerina DiPaolo in her capacity as executrix, were parties to any such probate court judgment. Therefore, the final accounting filed in the estate of Paolo DiPaolo does not constitute *res judicata* as to the instant action, except as to plaintiff Enerina DiPaolo.

**{¶66}** Here, the trial court's focus on whether the issue was addressed or decided on the merits is misplaced. The nature of claim preclusion is that it bars the subsequent litigation of issues that *could have* been previously raised or addressed—not the issues that actually were decided. The focus of the res judicata inquiry is whether the claimant was a party to the prior proceedings. Thus, we disagree with the court's res judicata analysis.

**{¶67}** The current version of R.C. 2115.16, *Hearing on inventory*, provides for exceptions to an estate inventory to be filed. It states in part:

> The executor or administrator may serve notice of the hearing, or may cause the notice to be served, upon any person who is interested in the estate. The probate court, after notice to the executor or administrator, either upon the motion of any interested party for good cause shown or at its own instance, may order that notice of the hearing is to be served upon persons the court designates.

**{¶68}** In this case, Theaker II was a party with notice and opportunity to object and participate as executor and trustee. As a result of his active participation in this capacity, it is logical and reasonable to conclude that he was aware of the content of the filings and the nature of the proceedings in his personal capacity as a beneficiary as well. Although Theaker II may not have been an official party to the estate proceedings in his personal capacity, he was nevertheless listed as a beneficiary of the trust and an heir in the proceedings. And while acting in his official capacity, Theaker II signed each of the requisite filings, including the inventory, and distributions such that it cannot be challenged that he was aware of the proceedings and was aware that the royalty interest was included and distributed by him as fiduciary and to him, in part, as beneficiary.

**{¶69}** For these reasons, we conclude the trial court erred by holding that res judicata does not apply.

{¶70} Nevertheless, we affirm the trial court's decision for a different reason—the royalty interest never became property of the estate in light of the TOD affidavit, and as such, the interest could not be transferred or conveyed by Theaker II in his representative capacity.

{¶71} R.C. 5302.22(C)(1) states:

If an individual who owns real property or an interest in real property as a sole owner . . . executes a transfer on death designation affidavit, upon the death of that individual, title to the real property or interest in the real property specified in the affidavit vests in the transfer on death beneficiary or beneficiaries designated in the affidavit.

Moreover, R.C. 5302.23(A) states "[a]ny affidavit containing language that shows a clear intent to designate a transfer on death beneficiary shall be liberally construed to do so."

{¶72} Here, Theaker II acted in his representative capacity and attempted to convey the royalty interest to himself and Sutherly consistent with the decedent's wishes. Yet Theaker II's efforts and the court's approval of the same were to no avail since the right of ownership never transferred to the estate. R.C. 5302.22(C)(1).

{¶73} Moreover, R.C. 5302.23(B) states:

Real property or an interest in real property that is the subject of a transfer on death designation affidavit as provided in section 5302.22 of the Revised Code . . . has all of the following characteristics and ramifications:

. . .

(9) Any transfer on death of real property or of an interest in real property that results from a transfer on death designation affidavit designating a transfer on death beneficiary is not testamentary. *That transfer on death shall supersede any attempted testate or intestate transfer of that real property or interest in real property.*

(Emphasis added.)

{¶74} Ownership of the interest automatically vested in Theaker II upon Theaker I's death. Had the royalty interest actually been part of the estate or had Theaker II conveyed the interest in his personal capacity, we may have agreed with Sutherly's arguments herein. However, because the royalty interest transferred to Theaker II

automatically by operation of law upon the death of the parties' father, the interest did not become part of the estate. Thus, when Theaker II listed it as an asset and conveyed it to himself and his sister per their father's will and trust, the estate did not own the asset and thus Theaker II, as fiduciary, lacked the authority to convey it.

**{¶75}** It is elemental that one cannot convey property that one does not own. *Kocher v. Ascent Resources-Utica, LLC*, 2023-Ohio-3592, ¶ 50 (7th Dist.), quoting *Sharp v. Miller*, 2018-Ohio-4740, ¶ 28 (7th Dist.) (analyzing whether there was a conveyance or title transaction, such that a "savings event" occurred under the DMA.).

**{¶76}** Because the royalty rights vested automatically in Theaker II in his personal capacity upon the decedent's death, Theaker II's efforts to convey the same pursuant to the decedent's will and/or trust by Theaker II in his fiduciary capacity were of no legal consequence. For this reason, we affirm.

**{¶77}** As stated, Sutherly raises several other reasons why she believes the trial court erred in its decision, i.e., judicial estoppel, exception to transfer, severance, intervening transfer, post-death assignment, equitable estoppel.

**{¶78}** Sutherly contends Theaker II should be judicially estopped from arguing the TOD transferred the interest to him. We disagree.

> The doctrine of judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding. Courts apply judicial estoppel in order to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposing to suit an exigency of the moment. The doctrine applies only when a party shows that his opponent: (1) took a contrary position; (2) under oath in a prior proceeding; and (3) the prior position was accepted by the court. Courts have applied this doctrine when inconsistent claims were made in bankruptcy proceedings that predated a civil action.

(Citations omitted; cleaned up.) *Greer-Burger v. Temesi*, 2007-Ohio-6442, ¶ 25.

**{¶79}** The decedent's decision to execute the TOD affidavit prevented it from becoming an asset of the estate. Moreover, the transfers and efforts by Theaker II to

Case No. 25 BE 0003

convey and assign the royalty interest were undertaken by Theaker II in his representative capacity and pursuant to the directives in the decedent's will and trust. Thus, the doctrine is inapplicable since Theaker II did not take a contrary position in his personal capacity. He acted according to the directives of the decedent and as the decedent's representative.

**{¶80}** Sutherly also relies on language in the TOD affidavit, which generally refers to prior exceptions and reservations. According to Sutherly, the alleged reservation clause contained in the TOD states: "Also excepting all conveyances, restrictions, exceptions, reservations and easements, including coal and/or other minerals heretofore sold and conveyed, or of record." She claims the inclusion of this general language acted to preserve and exclude the oil and gas rights from being conveyed to Theaker II upon the decedent's death since the paid up oil and gas lease was previously filed and thus, was "of record." We disagree.

**{¶81}** The right to receive rents and profits ordinarily follows the legal title to land unless the grantor includes a specific provision reserving the right to receive rental payments in the instrument conveying the subject property. *LRC Realty, Inc. v. B.E.B. Properties*, 2020-Ohio-3196, ¶ 13-15.

**{¶82}** "In a conveyance of real estate or any interest therein, all rights, easements, privileges, and appurtenances belonging to the granted estate shall be included in the conveyance, unless the contrary is stated in the deed." R.C. 5302.04. Here, no words of reservation appear on the face of the TOD affidavit in connection with the words oil and gas lease or oil and gas rights. The fact that the decedent executed and recorded a lease authorizing XTO the right to search for oil and gas on the property, which was recorded before the TOD affidavit conveying the property upon his death, does not mean the TOD affidavit excluded the oil and gas rights. Absent clear language showing this intent, this argument lacks merit.

**{¶83}** Additionally, Sutherly argues the doctrines of intervening transfer, post-death assignment, and equitable estoppel apply. We disagree. As stated, the actions taken by Theaker II transferring the interest after their father's death were made in his representative capacity pursuant to the decedent's directives in his will and trust. However, because the interest vested automatically in Theaker II in his personal capacity,

his conduct purporting to transfer and assign the right in his capacity as executor and trustee could not and did not transfer the interest since it was no longer owned by decedent and never became part of his estate by operation of law. The TOD affidavit superseded any estate efforts to otherwise transfer the property. R.C. 5302.23(B).

{¶84} The assignment of fifty percent of the royalty interest to Sutherly by Theaker II was in his representative capacity. Theaker II lacked the authority to convey the interest since the estate did not have the right of ownership. Thus, these arguments lack merit and are overruled.

{¶85} Further, contrary to Sutherly's contention, the execution of a lease authorizing another to search for and extract oil and gas from the real property did not sever the oil and gas rights from the real estate. Where the terms of a written instrument are clear and unambiguous, courts must employ the document as written. *Aultman Hospital Ass'n v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53 (1989). Language in an agreement leasing the right to explore and drill for mineral rights is not the same as language in a deed severing the mineral rights from the surface estate.

{¶86} Sutherly's first and second assigned errors lack merit and are overruled.

{¶87} Sutherly's third and final assignment of error asserts:

"[No. 3] The Probate Court erred when it decided that Mrs. Sutherly's motion to amend and supplement her pleading was moot by its decisions on the parties' motions for summary judgment. *Id.*"

{¶88} Civ.R. 15(A) governs amendments to pleadings and states in part:

A party may amend its pleading once as a matter of course within twenty-eight days after serving it or, if the pleading is one to which a responsive pleading is required within twenty-eight days after service of a responsive pleading or twenty-eight days after service of a motion under Civ.R. 12(B), (E), or (F), whichever is earlier. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court shall freely give leave when justice so requires.

We review decisions denying leave to amend a pleading for an abuse of discretion. *Peterson v. Teodosio*, 34 Ohio St.2d 161, ¶ 6 (1973).

**{¶89}** The trial court did not abuse its discretion by denying Sutherly's motion to amend her pleadings. The court had already permitted her to file an amended complaint, and this second motion to amend her complaint was filed one year and four months after her original complaint and on the same date as her motion for summary judgment. Moreover, the trial court found the motion to amend was moot as a result of its ruling on the existing claims.

**{¶90}** In light of our conclusion that Theaker II in his representative capacity lacked the authority or power to convey the rights, we agree. The TOD statutes dictate the outcome, and thus Sutherly's amending the complaint would have had no practical effect on the controversy. *Cain Ridge Beef Farm, LLC v. Stubbins, Watson, Bryan & Witucky, LPA*, 2023-Ohio-4727, ¶ 52 (7th Dist.); App.R. (A)(1)(c).

<u>Conclusion</u>

**{¶91}** In light of the foregoing, we affirm the trial court's judgment.


Waite, J., concurs.

Hanni, J., concurs.

<u>Case No. 25 BE 0003</u>

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas Probate Division of Belmont County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**